UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No.: 19-10080-NMG |
| | ) |
| MARCI PALATELLA *et al.*, | ) |
| | ) |
| | ) |
| Defendants | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT
MARCI PALATELLA'S MOTION TO SEVER [DKT. 2051]**

Less than a month before jury selection, defendant Marci Palatella has moved to sever herself from the September 2021 trial based on the contentions that (i) her inability to elicit purported "essential exculpatory" testimony from Donna Heinel would cause a "miscarriage of justice," and (ii) a separate trial would be less prejudicial to her and more efficient. Dkt. 2051, 2052. Palatella's arguments are without merit, and for the reasons set forth below, her motion should be denied.

**I.   RELEVANT BACKGROUND**

The Court is familiar with the facts of this case, and the government will not restate them in detail here. *See, e.g.*, Dkt. 1169, 1334, 1373. Palatella is alleged to have engaged in both the test-cheating and side-door aspects of the charged scheme. *See* FSI ¶¶ 210–24. As to the latter, after Palatella told William "Rick" Singer that her son was "not the team's star" on his high school's junior varsity football team and that he had "gotten the message that he is not big enough for college football," Dkt. 3-4 at ¶ 342, Palatella agreed to pay $500,000 to secure her son's admission to USC as a purported Division I football recruit using falsified athletic credentials. FSI ¶¶ 219–24.

Two weeks after Donna Heinel, USC's senior women's athletics administrator, presented Palatella's son to USC's subcommittee for athletics admission and used falsified credentials to obtain the committee's approval to admit him as a football recruit, Palatella mailed Heinel a $100,000 check payable to the USC Women's Athletics Board. *Id.* at ¶¶ 220–21. After her son received a formal acceptance letter from USC, Palatella caused her company to wire $400,000 to Singer's sham non-profit, the Key Worldwide Foundation ("KWF"). *Id.* at ¶ 222. During a subsequent consensually recorded phone call, Palatella agreed with Singer to mislead the IRS if anyone inquired about her payments. *Id.* at ¶ 223.

In January 2019, Palatella exchanged text messages with a friend regarding the money she paid to secure her son's fraudulent admission to USC. *Id.* at ¶ 224. In response to her friend's message that "I can only think the money was spent wisely for school or else wise," Palatella stated, "I don't think most of it went to the school between us only. Please never ever repeat anything." *Id.*

## II.   APPLICABLE LAW

As this Court has explained in denying severance motions in this case[1] and others,[2] the First Circuit's "general rule is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources." *United States v. Soto-Beníquez*, 356 F.3d 1, 29 (1st Cir. 2003) (citing *United States v. O'Bryant*, 998 F.2d 21, 25 (1st Cir. 1993)). "[S]everance is particularly difficult to obtain where, as here, multiple defendants share a single indictment." *Id.*; *see also Zafiro v. United States*, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together," because joint trials

---

[1] *See* Dkt. 1373, 1414, 1438, 1649.
[2] *See, e.g.*, *United States v. DeNunzio*, No. 14-cr-10284-NMG, 2015 WL 2226251, at *2–3 (D. Mass. May 12, 2015).

"promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'") (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). "Because conspiracy cases often involve evidence that is admissible against all members of the conspiracy, 'in the context of conspiracy, severance will rarely, if ever, be required.'" *Soto-Beníquez*, 356 F.3d at 29 (quoting *United States v. DeLuca*, 137 F.3d 24, 36 (1st Cir. 1998)).

Accordingly, where Palatella and her co-defendants have been properly joined under Fed. R. Crim. P. 8(b), severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Even then, Fed. R. Crim. P. 14 does not require severance, but leaves it to the discretion of the court. *See id.* ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures . . . often will suffice[.]").

As this Court has held, "the requisite showing of prejudice [for severance] means more than just a better chance of acquittal at a separate trial," and instead, "a defendant must demonstrate prejudice so pervasive that a miscarriage of justice looms." *DeNunzio*, 2015 WL 2226251, at *2–3; *see also* Dkt. 1414 at 2–3. This is a "stringent standard." Dkt. 1414 at 3 (denying motion for severance); *accord* Dkt. 1438 at 4 (same).

### III.  ARGUMENT

Palatella contends that she did not seek severance until the eve of trial because she did not understand until now that the USC insider she is alleged to have bribed would be a critical witness for her. Dkt. 2052 at 4. That contention strains credulity. It is also untrue, and Palatella's conclusory contention to the contrary does not satisfy her "stringent" burden of justifying the relief she seeks.

3

A defendant seeking severance to secure the testimony of a co-defendant must satisfy a demanding four-part test. *See United States v. Nason*, 9 F.3d 155, 158 (1st Cir. 1993) (affirming denial of motion for severance). The defendant "must demonstrate (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed." *Id.* And even if the defendant satisfies those four prongs, severance is not necessarily warranted. Instead, the court must also "(1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) consider whether the testimony would be subject to substantial damaging impeachment; (3) assess the counter arguments of judicial economy; and (4) give weight to the timeliness of the motion." *Id.*

Applying these standards, First Circuit courts have repeatedly affirmed the denial of severance motions based on the need for purported exculpatory testimony from a co-defendant. *See, e.g.*, *Nason*, 9 F.3d at 158; *see also United States v. Font-Ramirez*, 944 F.2d 42, 45 (1st Cir. 1991) (holding that denial of severance motion, absent a showing satisfying each of the factors above, "was obviously not an abuse of discretion"); *United States v. Perkins*, 926 F.2d 1271, 1280 (1st Cir. 1991) (same); *United States v. Doherty*, 867 F.2d 47, 64 (1st Cir. 1989) (same); *United States v. Drougas*, 748 F.2d 8, 19 (1st Cir. 1984) (same); *United States v. Smolar*, 557 F.2d 13, 21 (1st Cir. 1977) (same); *Gorin v. United States*, 313 F.2d 641, 646 (1st Cir. 1963) (same).

Palatella's motion does not even attempt to meet many of these factors. First, she does not establish, through an affidavit from Heinel or Heinel's counsel, that Heinel "will in fact testify" if Palatella is tried after Heinel's expected November 2021 trial. The affidavit of *Palatella's own counsel* that Heinel "would testify . . . if and when the charges against [her] are resolved" is not enough. Dkt. 2053 at ¶ 3. *See, e.g.*, *Nason*, 9 F.3d at 159 ("[The defendant] did not show, as

required, that either [of his co-defendants] would in fact testify for [him] at a separate trial" because "[h]e did not file an affidavit" from his co-defendants or his co-defendants' counsel to that effect).

Second, Palatella does not describe the "substance of" Heinel's potential testimony, much less how it would exculpate her. See Dkt. 2052 at 4. First Circuit courts have consistently denied similarly conclusory motions that lack an affidavit – *from the co-defendant* – detailing the substance of the co-defendant's expected testimony. See, e.g., Font-Ramirez, 944 F.2d at 45 (affirming denial of motion for severance where co-defendant's affidavit did not provide the substance of his expected testimony); Nason, 9 F.3d at 159 (rejecting severance motion absent affidavit and explaining that "allegation" by counsel in court filing about exculpatory nature of testimony "is insufficient"). Notably, Palatella does not even purport to have communicated with Heinel directly until *after* making a *quid pro quo* payment in furtherance of the charged conspiracy. Heinel could therefore not offer any testimony, much less exculpatory testimony, about Palatella's good faith in making that payment (or agreeing to make it). And Palatella's self-serving speculation concerning how Heinel would testify about a subsequent communication falls short of satisfying the "stringent standard" for severance. See Perkins, 926 F.2d at 1280 (affirming denial of severance motion where it provided "nothing beyond [defendant's] counsel's conclusory assertion that [co-defendant's] testimony would exculpate her").[3]

---

[3] The one case Palatella cites in support of her motion is inapposite. See United States v. Burns, 898 F.2d 819, 820 (1st Cir. 1990). In Burns, a narcotics case, the government, the defendant, and the district court all agreed to the exculpatory nature of a co-defendant's testimony because he submitted an affidavit attesting that the defendant had "never voluntarily and knowingly been involved with me . . . in any alleged narcotics offenses." Id. at 819–20. After the district court found that the testimony was exculpatory and granted severance, the court subsequently refused to allow a continuance when the co-defendant became temporarily unavailable due to his detention in a mental-health facility. Id. at 821. The First Circuit reversed the district court's refusal to grant a brief continuance for the co-defendant to be available as a witness. Id.

Third, even if Palatella had shown a bona fide need for Heinel's testimony, demonstrated its substance and how it is exculpatory, and established that she will "in fact" testify if Palatella is severed – *none* of which she has done – the final four factors that the Court must consider weigh against severance. It is, as an initial matter, unclear why Palatella needs the testimony of *someone else* to establish her own "good faith" belief that her actions were "completely above-board." Dkt. 2052 at 4–5. And if Heinel were to testify, she would be subject to "substantial, damaging impeachment," including about her own alleged crimes. *See Drougas*, 748 F.2d at 19. Moreover, factors of judicial economy and timeliness compel denial of Palatella's motion, filed less than a month before her trial on allegations she has known about for more than two years, and premised on her need for the testimony of an obviously unavailable criminal defendant.

Further, Palatella asserts that severance is warranted because "[a] jury may well look at Ms. Palatella and deem her more culpable" than her co-defendants who participated in only the side-door aspect of the scheme, and because an additional single-defendant trial is more efficient than trying her with her co-defendants. Dkt. 2052 at 6–7. This Court has considered, and rejected, similar arguments in denying severance motions in this case, and the government will not belabor the issues here. *See* Dkt. 1373, 1414, 1438, 1649. Nevertheless, it is noteworthy how Palatella can argue that a *third* trial in this matter, with her alone, that will require testimony from witnesses for both the side-door and test-cheating aspects of the scheme, is the most "efficient and speedy" option. Dkt. 2052 at 7. It is, to the contrary, the *least* efficient option because, as this Court has explained, "[r]egardless of whether they participated in the 'side-door' scheme, the test taking scheme or a different scheme with Singer, the evidence introduced against one defendant will largely be relevant and admissible as to each defendant," and therefore "if separate trials were to be held, much of the evidence and many witnesses would be duplicative." Dkt. 1414 at 4.

## IV.  CONCLUSION

For the foregoing reasons, Palatella's motion to sever should be denied.

          Respectfully submitted,

          NATHANIEL R. MENDELL
          Acting United States Attorney

      By: */s/ Ian J. Stearns*
          JUSTIN D. O'CONNELL
          KRISTEN A. KEARNEY
          LESLIE A. WRIGHT
          STEPHEN E. FRANK
          IAN J. STEARNS
          Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

          */s/ Ian J. Stearns*
          IAN J. STEARNS
          Assistant United States Attorney