UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------- x
UNITED STATES OF AMERICA,           :

       Plaintiff,                  :   Criminal Action
                                            No. 19-10080-16-NMG
V.                                  :
                                            **FILED PARTIALLY UNDER**
MARCI PALATELLA,                    :   **SEAL PURSUANT TO**
                                            **DECEMBER 9, 2021 ORDER**
       Defendant.                  :
------------------------------- x

**DEFENDANT MARCI PALATELLA'S [DEF. NO. 16]
SENTENCING MEMORANDUM**

Defendant Marci Palatella has pled guilty to Count One of the Fourth Superseding Indictment, insofar as it charges conspiracy to commit honest services mail fraud in violation of 18 U.S.C. § 1349. Ms. Palatella fully acknowledges that what she did was wrong. She is profoundly and deeply remorseful for her actions, her involvement with Rick Singer, and this case.

Ms. Palatella entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) and the parties agreed to recommend a guidelines sentence of incarceration for a period of six weeks, a fine of $250,000, 24 months of supervised release, with a condition of home confinement for the first six months of supervised release and 500 hours of community service imposed as an additional condition of supervised release, as well as a mandatory special assessment of $100. Ms. Palatella submits this Memorandum in support of the parties' recommended sentence, which is sufficient but no greater than necessary to effectuate the goals of 18 U.S.C. § 3553(a).

I.      **Marci Palatella's Background and Character**

Ms. Palatella grew up in California, the daughter of a hard-working middle-class family that placed a strong emphasis on education. Her father worked in the pharmaceutical industry while her mother stayed at home and raised Ms. Palatella and her three brothers, and, later in life, became a high school English teacher. Ms. Palatella worked to help put herself through college in northern California. She had always intended to complete her four-year education, but found an exciting opportunity in the wine industry during her last year at school. Ms. Palatella intended only to take a semester off of school, but became so passionate about the wine industry that she never returned to college complete her last year—a decision she regrets to this day. But the opportunities she had and the relationships she forged in these early years of California's wine industry formed the building blocks for her career. After several years of diligently working her way up the corporate ladder, Ms. Palatella founded an alcoholic beverage sales and marketing company. Through her dedication and her hard work, over the years she has been able to expand her business to include building and operating a small bourbon distillery in Kentucky purchasing and developing real estate in several states.

Despite her passion for her career, the most important thing to Ms. Palatella is, and has always been, her family. She raised two sons with her husband Lou, a former professional football player. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ In recent years, Ms. Palatella has also cared for

her husband who has serious health issues, including suffering from Parkinson's disease. ▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Thus, in addition to the typical stressors of running a business, Ms. Palatella plays a critical daily role in the care and well-being of her family.

The 32 letters submitted with this Memorandum provide a telling glimpse into Ms. Palatella's character from those who know her best—close friends, family, and long-time community members and business associates. The number of acts of generosity and the list of recipients she has helped is long. For instance, a former employee of many years writes that the day she met Ms. Palatella her life was "completely changed." "She not only offered me a job that let me continue my education and allowed me to stand as an independent young woman, but she also covered my [college] tuition. She kindly opened up her home to me and gave me a safe place to be while I studied and finalized my divorce. Over the years, Marci has become more than my boss, more than a friend; she has been my confidant, a mentor, and a role model." *See* Exhibit 4, (Istdel Barboza Burciaga Letter).

Ms. Palatella's brother Bradford Benstock recounted how his sister offered him an opportunity to work and to train him at her beverage company, despite Mr. Benstock's lack of any experience, which he refers to as a "tremendous gift" that changed his life. Mr. Benstock goes on to state:

> I am far from the only person whose life changed for the better as a result of Marci's generosity. I have repeatedly seen/heard of her hiring someone relatively spontaneously, based on their character and spirit, with less regard for their qualifications. Many of these people have continued working with Marci for years, and she has gone so far as to encourage and even assist them financially with moving their lives forward. I remember well when she strongly encouraged some employees to purchase homes, and gave them the financial assistance to do so. Those people are all far more financially secure as a result.

*See* Exhibit 1, (Bradford Benstock Letter).

3

Ms. Palatella, despite her own challenging circumstances, has been a consistent pillar of support for her friends and neighbors. Her long-time friend Megan Fannon describes how, while Ms. Palatella was juggling the opening of her distillery in Kentucky and helping her husband through an injury, she provided Ms. Fannon's entire family with a dinner for 40 people after Ms. Fannon's father passed away. *See* Exhibit 9 (Megan Fannon Letter) Similarly, Ms. Palatella sent a week's worth of meals when her friend Julie Lefler had a new baby. *See* Exhibit 21, (Julie Lefler Letter). Carla Hannahs, a friend of Ms. Palatella's since 1976, describes how Ms. Palatella has always been available through all of life's challenges, including financially and emotionally supporting Ms. Hannahs while she raised her son as a single parent. "I have never forgotten as a young mother struggling to raise a son and sort out my life Marci was always available to me." *See* Exhibit 15, (Carla Hannahs letter). Another friend recounts how, ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓, Ms. Palatella "dropped her life to fly down to San Diego for an afternoon to sit with me ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. She put aside her life to come help a friend. This is only one example of many where Marci dropped everything to be there for those she loves." *See* Exhibit 20, (Therese Kilgallon Letter).

Ms. Palatella's longtime friend Zachary Hulsey added, "based on 20 years of firsthand experience as neighbors and friends, we believe Marci Palatella to be a genuine and truthful person who is doing her best to cope with a variety of life challenges disconnected from her wealth and perceived social status. In our view, she has dealt with these challenges admirably, conscientiously, and graciously, succeeding where many others would have failed." *See* Exhibit 19, (Zachary Husley Letter.) Mr. Hulsey goes on to say, "Marci has managed these many competing demands on her time and attention with aplomb, kindness, and generosity. … she cares about those around her and demonstrates that caring every day." *Id.*

From long time real estate business associate, Gerda Englebart, "When one of my sons was killed in a car accident Marci stepped up to be sure that I could take whatever time-off that I needed to grieve and pull my life back together. ... This is just one example of her good nature and generosity." *See* Exhibit 8, (Gerda Englebart Letter). Ms. Englebart goes on to say, "she is a good person who cares about society at large . . . regardless of their 'station' in life-she sees the humanity. She is gracious and generous to wait-staff at restaurants, to the house-cleaners, gardeners and repairmen, and I know that her employees at International Beverage have been with her for decades." *Id*. These types of comments are a constant theme among the many people who wrote on her behalf and have known her for years.

Ms. Palatella's kindness and generosity extends beyond those she knows, to the community at large. Ms. Palatella is "consistent in her generosity, often investing in causes she believed would result in the betterment of our society such as schools in the community, scholarship programs at her son's high school, hospitals, medical research and numerous programs supporting families of children with special needs." *See* Exhibit 21, (Julie Lefler Letter). Ms. Palatella served on a non-profit board for an organization that provides challenged youth resources to address learning disabilities. *See* Exhibit 10, (Tab French Letter). Friend of more than 40 years, Cathy MacNaughton gives an impressive rundown of Ms. Palatella's volunteer and charitable efforts:

> Her contributions were always selfless and for the good of mankind. She is passionate about causes that help families and those less fortunate. She has volunteered and supported Habitat for Humanity, Family Service Agency, Samaritan House, Special Olympics, CuriOdessy, Sacred Heart Schools, San Francisco Opera Guild, San Francisco Ballet, Camp Hill Special School, Boys and Girls Club, Camphill Soquel, Via Services, Via West Special Needs Camp, Stanford University Hospital, Lucille Packard Hospital, Mills Hospital, Peninsula Hospital, Creative Learning Center Special School, Hillsborough School Foundation, Little League, Ability Path, San Mateo County Humane Society, Community Gatepath, Hillsborough South School, Girl Scouts, University of Pittsburgh, University of Southern California and countless others.

*See* Exhibit 22, (Cathy MacNaughton Letter).

As friend of over 40 years, Kirstie Wilde writes, Ms. Palatella "always said 'yes' when asked for donations to a neighborhood, school, or worthwhile cause. That is who she is, and always been." *See* Exhibit 32, (Kirstie Wilde Letter). David Granek, who has worked with Ms. Palatella and her company for over 25 years, writes that Ms. Palatella "is the first in line . . . whether it is to raise significant funds for charities which address the special needs of less fortunate kids afflicted as is her [youngest son], or coming to one of her employee's aid for medical expenses, a down-payment on a home, or educational costs, Marci has always been overly generous." Mr. Granek describes Ms. Palatella as "generous to a fault," and someone who speaks "passionately about her obligation to give to those in need[.]" *See* Exhibit 13, (David Granek Letter). Ms. Palatella realizes she has been fortunate in her life and business affairs, and has made it a point to give back to the community, both with her time and her money, long before the events that lead to this case.

Even while Ms. Palatella is so active in her community and in her business, she is the bedrock of her family and is essential to their wellbeing. Mr. Bradford Benstock describes Ms. Palatella as "always be[ing] determined to give [her youngest son] the best possible life, to find the best schools, the best caregivers, to prioritize family time even when it was difficult. I think that [her youngest son]'s upbeat and happy personality is at least partly a reflection of his mother's loving and unwavering parenting." *See* Exhibit 1, (Bradford Benstock Letter). As friend and fellow volunteer Dr. Mark Mandel describes:

> In addition to her volunteer work and her very busy career as CEO of a midsize company, ███████████████████████████████████████████████ Marci has devoted her life to raising [her younger son] and her older son [ ]which has been a supreme challenge for her as it would be for any loving parent. Essentially, at this time, in addition to her busy frantic work schedule, ███████████████

6

███████████████████████ Although they have the benefit of some supportive care … ***she*** is the heartbeat and soul of their day to day existence.

*See* Exhibit 23, (Mark Mandel Letter).

Ms. Palatella is described as "the most supportive and loving mother" who "does it all! She takes care of her kids, her husband, her household, her business, her employees, charities and still manages to find time for her friendships." *See* Exhibit 16, (William Harris Letter). Tamila Sayar, the founder and director of the behavioral health school that Ms. Palatella's youngest son attends, writes that Ms. Palatella appears to be "the person who has to manage everything including the well-being of [sic] both her sons and her husband." Ms. Sayar describes Ms. Palatella as a "very active parent" who is always available to discuss her son's needs and challenges at school. "She is the main person [her son] talks about and clearly relies on." *See* Exhibit 28, (Tamila Sayar Letter).

The sheer number of character references that poured in for Ms. Palatella, most from friends, family and business partners who have known Ms. Palatella for decades, is indicative of her strong character. Ms. Palatella's friend and business partner David Granek sums up the sentiment expressed throughout these 32 letters: "Marci Palatella's life is one which should not be measured by a single act; but, rather a life filled with honorable dealings, good deeds and kind acts … a sincere commitment to family, friends and those less fortunate, with whom she is committed to share." *See* Exhibit 13, (David Granek Letter).

II. <u>Nature of the Offense</u>

Ms. Palatella pled guilty to Count One of the Fourth Superseding Indictment, insofar as it charges conspiracy to commit honest services mail fraud in violation of 18 U.S.C. § 1349. Ms. Palatella takes full responsibility for this offense.

### III. Sentencing Guidelines

The guideline for a violation of 18 U.S.C. is § 1349 is U.S.S.G. §2X1.1. PSR ¶ 74. This offense, which has a statutory maximum term of imprisonment of 20 years or more, has a base offense level of 7. PSR ¶ 74. Because Ms. Palatella has demonstrated acceptance of responsibility for the offense, the offense level is decreased by two levels. PSR ¶ 82. Based on a total offense level of 5 and criminal history category of I, the guideline imprisonment range is zero to six months. PSR ¶ 139. The guideline range for a term of supervised release is from one to three years, and the maximum fine is $250,000. PSR ¶¶ 143, 147.

Ms. Palatella entered into a C-plea with a recommended sentence of incarceration for a period of six weeks, a fine of $250,000, 24 months of supervised release, with a condition of home confinement for the first six months of supervised release and 500 hours of community service imposed as an additional condition of supervised release, and a mandatory special assessment of $100. This sentence, which imposes the maximum fine and a period of imprisonment, falls within the sentencing guidelines.

### IV. Need for the Sentence Imposed

The proposed guidelines sentence, which includes a period of incarceration, conveys the seriousness of Ms. Palatella's crime. Ms. Palatella will also be subject to a significant fine, 24 months of supervised release, and 500 hours of community service. Ms. Palatella runs her own businesses in addition to taking care of her son and husband, so 500 hours of community service will be a substantial amount of time for her to complete.

As a byproduct of this case, Ms. Palatella has faced significant professional consequences as well. Her businesses of more than three decades, which in large part are based on relationships she has personally forged over the years, have greatly been impacted by this case. Her business lines of credit and financing were impacted by initial charges of money laundering (the government

8

eventually moved to dismiss this, but by then the damage was done). Ms. Palatella, and her businesses, have a variety of federal, state, and local licenses involving United States Customs and alcoholic beverages authorities. Ms. Palatella accepts full responsibility for her actions and is deeply remorseful for any pain and suffering these may have caused others, but has personal and business consequences as a result of her plea that have not befallen some of the other defendants.

Ms. Palatella has strived throughout her adult life to be a contributor to society, and is not at risk of reoffending. She fully understands that her conduct was wrong, and is deeply remorseful of her actions and any impact it may have had in any way on others. The proposed sentence is sufficient to deter both Ms. Palatella and any others in a similar position.

## V. Need to Avoid Unwarranted Sentencing Disparities

Ms. Palatella's sentence is comparable to other parents sentenced in this case with similar involvement. For example, Lori Loughlin, who paid $500,000 to obtain her two daughters' admission to USC, was sentenced to two months imprisonment, two years supervised release, 100 hours of community service, and a $150,000 fine. (ECF No. 1495.) Diane Blake, who paid $250,000 to obtain her daughter's admission to USC, was sentenced to six weeks imprisonment, two years supervised release, 100 hours of community service, and a $125,000 fine. (ECF No. 1642.) Homayoun Zadeh, who pled guilty to filing a false tax return in connection with a fraudulent charitable contribution to Mr. Singer's foundation, was sentenced to six weeks imprisonment, a $20,000 fine, one year of supervised release, 250 hours of community service, and $8,414 in restitution. (ECF No. 2435.) Elisabeth Kimmel, who paid $525,000 to obtain two of her children's admissions to college using the services of Rick Singer, pled guilty to conspiracy to commit mail and wire fraud, and was sentenced to six weeks imprisonment, a $250,000 fine, two years supervised release (the first 12 months of which are on home detention), and 500 hours of community service. (ECF No. 2474.)

Ms. Palatella's proposed sentence is not an outlier, but rather is consistent of those individuals convicted of similar crimes, and within the guidelines range calculated by Probation. Because of this, the proposed sentence for Ms. Palatella does not create a disparity.

## VI. Conclusion

For the foregoing reasons, Ms. Palatella submits that the joint recommendation of a guidelines sentence of incarceration for a period of six weeks, a fine of $250,000, 24 months of supervised release, with a condition of home confinement for the first six months of supervised release and 500 hours of community service imposed as an additional condition of supervised release, and a mandatory special assessment of $100 should be imposed. This proposed sentence is sufficient but not greater than necessary to effectuate the purposes of 18 U.S.C. § 3553(a).

Dated: December 9, 2021
Boston, Massachusetts

Respectfully submitted,

MARCI PALATELLA

By her attorneys,

*/s/ Michael K. Loucks*
Michael K. Loucks (BBO # 305520)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Emily Reitmeier (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
emily.reitmeier@skadden.com

---

**CERTIFICATE OF SERVICE**

I, Michael K. Loucks, hereby certify that on December 9, 2021, a true copy of the foregoing document was served by first class mail, postage prepaid, upon all counsel of record.

Dated: December 9, 2021    */s/ Michael K. Loucks*
                                          Michael K. Loucks